UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEROY AND THOMASINE WHITE, as Personal Representatives of the Estate of Kellen Anthony White,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA, et al.,**<br><br>Defendants. | Civil Action No. 10-01477 (JDB) |

## MEMORANDUM OPINION

Plaintiffs Leroy and Thomasine White bring this action on behalf of their deceased son, Kellen Anthony White, against defendants Richard Greenwell and Matthew Shelfo of the United States Capitol Police. Plaintiffs claim that defendants' actions toward Kellen White, resulting in his unfortunate death, violated his Fourth and Fifth Amendment rights, and they request damages under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Now before the Court is [39] defendants' motion for summary judgment. Upon consideration of the record, and for the reasons described below, the Court will grant defendants' motion.

I. Background

On July 15, 2009, around 5:15 p.m., Kellen Anthony White was driving a white Mercedes in the 400 block of Second Street Northeast in the District of Columbia. Second Am. Compl. [Docket Entry 10] ¶ 22. Capitol Police Officer Michael Doherty observed a fake Virginia temporary tag on the Mercedes and initiated a traffic stop. Defs.' Motion. for Summ. J.

[Docket Entry 39] ("Defs.' MSJ"), Ex. 21 at 2228.  As Officer Doherty was calling out the traffic stop on the radio, White fled the scene.  Id.  Doherty radioed for help and pursued the vehicle on his bicycle.  Id.  Three Capitol Police officers observed a white Mercedes matching Doherty's description entering Columbus Circle in front of Union Station several minutes later, and the officers approached the vehicle from the front.  Id. at 2251.  Officer Doherty, who could see the Mercedes from his location, radioed "that's the one."  Id. at 2248.

As the officers approached the vehicle, it sped off, striking one of the police officers on the wrist.  Id. at 2251.  Defendant Officer Shelfo, who was also at Union Station inside his marked police cruiser, observed the attempted stop and flight of the Mercedes.  Id. at 2263.  Officer Shelfo activated his emergency equipment and began to pursue the fleeing car.  Id.  White drove onto the sidewalk at Union Station and then onto southbound Louisiana Avenue where he struck another vehicle, drove briefly into the northbound lanes, and ignored traffic lights.  Id.  The chase proceeded several blocks to the intersection of Louisiana Avenue and New Jersey Avenue in Northwest D.C., where White executed a high-speed left turn onto southbound New Jersey Avenue.  Id.  White collided with a parked vehicle in the 200 block of New Jersey Avenue Northwest and slowed to a stop.  Id.

Defendant Officer Greenwell, who was stationed at a guard post near where White's Mercedes stopped, heard radio reports regarding the approaching chase, personally observed White's car collide with a parked vehicle and slow to stop, and saw Officer Shelfo drive his police cruiser into a position blocking the driver's side door of the Mercedes.  Id. at 2241.  Officers Greenwell and Shelfo approached the driver's side of the Mercedes with their weapons drawn.  Id. at 2241.  Officer Shelfo claims that he repeatedly ordered White to show his hands

and that White did not comply.[1]  Id. at 2263.  Officers Greenwell and Shelfo each claim that they observed White begin to crawl out of his driver's side window brandishing a weapon.  Id. at 2241, 2263.  The officers ordered White at least twice to drop his weapon, but both defendants claim that White instead pointed the gun at Officer Shelfo.  Id.  Officers Greenwell and Shelfo then both fired their weapons at White multiple times.  Id.

Surveillance video taken from both the roof of the United States Capitol Building and the New Jersey Avenue tunnel entrance to the Capitol complex shows a high speed chase terminating on New Jersey Avenue.  Defs.' MSJ, Ex. 1.  The video shows a marked police cruiser approaching and blocking the driver's side door of a stopped white Mercedes and two officers, one from the cruiser, approaching the driver's side of the Mercedes.  The video then shows White jumping out of his vehicle via the driver's side window while holding an object the plaintiffs concede appears to be a gun, Pls.' Opp'n to Defs.' MSJ, [Docket Entry 48] ("Pls.' Opp'n"), Ex. 2. ¶ 4(c), and it shows the officers assuming defensive positions immediately upon seeing the gun.  Id.  The video then shows the officers shooting White.  Id.  A still frame from the video provided by defendants appears to capture, although the photography is extremely grainy, at least one instance where White's gun is pointed at a police officer.  Defs.' MSJ, Ex. 23.  As discussed at greater length below, plaintiffs offer an affidavit stating that the video shows White attempting to show his hands, lower his weapon, and surrender, and that White never pointed a weapon at the defendant officers.  Pls.' Opp'n, Ex. 2.

Following the shooting, the District of Columbia's Office of the Chief Medical Examiner conducted an autopsy on White and concluded that he died from twelve gunshot wounds as a

---

[1] Officer Greenwell made no mention of this in his witness statement, Defs.' MSJ, Ex. 21, at 2241, but Officer Pollack, also on the scene, stated that he heard Officer Shelfo "yell at White to stop moving, or do not move repeatedly."  Id. at 2251.

result of the shooting.  Defs.' MSJ, Ex. 6.  Plaintiffs, on behalf of Kellen White's estate, filed a Bivens claim for civil damages against defendants, claiming that the defendant officers violated the Fourth and Fifth Amendments by unlawfully seizing White and unlawfully using excessive and deadly force against him.  Following discovery, defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

II.  Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson, 477 U.S. at 255.  A nonmoving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252.  A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record.  Fed. R. Civ. P.

56(c)(1)(A). If a party fails to support a factual dispute with evidence in the record, "the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. Moreover, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

III. Discussion

Defendant Officers Shelfo and Greenwell, who were acting in the course of performing their official duties during the events involving White, argue that they are entitled to qualified immunity on the plaintiffs' Bivens claims. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To defeat a government official's claim of qualified immunity, a plaintiff must show (1) that "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) that "the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201-02 (2001). Courts may grant qualified immunity "on the ground that a purported right was not 'clearly-established' by prior case law, without resolving the often more difficult question whether the purported right exists at all."

Reichle v. Howards, No. 11-262, slip op. at 5 (U.S. June 4, 2012) (citing Pearson v. Callahan, 555 U.S. 223, 227, 236 (2009)).

Plaintiffs argue that defendants' qualified immunity claim is waived in the context of constitutional torts by the post-Bivens amendments to the Federal Tort Claims Act embodied in 28 U.S.C. § 2680(h). Plaintiffs' contention is incorrect. Section 2860(h) waives sovereign immunity for the United States as to state tort claims, see Stewart v. United States, 2005 WL 1903318, at *2 (D.D.C. 2005), but it does not abrogate the defense of qualified immunity when law enforcement officers are sued in their individual capacity for alleged constitutional violations, Pearson, 555 U.S. at 231. Hence, the Court will consider whether defendants are entitled to qualified immunity on each claim.

A.  Unlawful Seizure Claims

As a preliminary matter, plaintiffs provide no evidence disputing any fact in the record prior to the start of White's exit from the Mercedes immediately prior to the shooting. See Pls.' Opp'n, Ex. 1 (Statement of Genuine Issues in Dispute). Instead, they provide only a list of assertions unsupported by any evidence in the record. Id. A party disputing a fact at the summary judgment stage must "support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). Hence, no material facts prior to White's exit from the car are in dispute; therefore, the qualified immunity issues relating to the defendants' actions prior to that point can be determined as a matter of law. See Celotex, 477 U.S. at 323.

Plaintiffs claim that defendants' initial stop of White and their chase of White constituted an unlawful seizure in violation of the Fourth Amendment. Second Am. Compl. ¶ 51. But these defendants cannot be liable for any potential unconstitutional actions taken during the initial stop of White by Officer Doherty, because one officer may not be held liable for the actions of

another officer under Bivens.[2]  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens suits, . . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Plaintiffs may not, therefore, pursue a claim for damages against Shelfo and Greenwell based on Officer Doherty's initial stop of White.

Plaintiffs next argue that Officer Shelfo's pursuit of White from Union Station to the 200 block of New Jersey Avenue, N.W. violated the Fourth Amendment.[3]  Second Am. Compl. ¶ 52. Assuming that the chase resulted in a seizure after it ended with White crashing into a parked car and coming to a stop, see Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989) (stating that a seizure occurs when government action "terminat[es] . . . freedom of movement through means intentionally applied"), the seizure was reasonable under the Fourth Amendment.  In a public setting, warrantless seizure of a person is permitted if a police officer has probable cause to arrest the person.  United States v. Watson, 423 U.S. 411, 423 (1976).  Determining if detention is reasonable is an objective inquiry that turns on whether a reasonable officer would have a sufficient basis to arrest or detain the person.  Whren v. United States, 517 U.S. 806, 812-13 (1996).

At the time Officer Shelfo began his pursuit of White's Mercedes, he had heard radio reports that White had fled from Officer Doherty, and he had personally witnessed White fleeing from the Capitol Police at Union Station and nearly running over two officers.  Defs.' MSJ, Ex.

---

[2] Even if this were not so, Officer Doherty's stop of White's car was constitutional. Terry stops are lawful "in a traffic-stop setting . . . to detain an automobile and its occupants pending inquiry into a vehicular violation."  Arizona v. Johnson, 555 U.S. 323, 326 (2009). Officer Doherty reasonably believed that the Mercedes was displaying a fake tag in violation of the District of Columbia Code. See D.C. Code § 50-1501.04(a)(1)(B).

[3] Officer Greenwell was stationed at a guard-house on New Jersey Avenue and did not participate in the event until White's car had crashed near his post, so plaintiffs' claims that the chase resulted in an unreasonable seizure cannot apply to him.

21 at 2263. "Fleeing from a law enforcement officer in a vehicle" is a crime punishable by up to 180 days imprisonment in the District of Columbia. See D.C. Code § 50-2201.05b(b)(1). Because Officer Shelfo had probable cause to chase and arrest White for that crime at the time he began the chase, any seizure resulting from the chase was constitutional. Moreover, Officer Shelfo developed additional justifications for continuing the chase and attempting to arrest White after witnessing further crimes during the course of the chase, including assaulting a federal officer, see 18 U.S.C. § 111, assaulting a police officer, see D.C. Code § 22-405, colliding with other vehicles, see D.C. Code § 50-2201.05, and reckless driving, see D.C. Code § 50-2201.04.

Plaintiffs claim that Officer Shelfo was subjectively motivated by his dislike of African-Americans. This allegation lacks any support in the record, but even if it were true, it has no effect on the constitutionality of any seizure. Probable cause inquiries are objective. Whren, 517 U.S. at 812-13. A reasonable officer presented with the facts known to Officer Shelfo could reasonably believe White had committed a crime justifying chase and arrest when the officer observed White fleeing from a police stop.

Because any seizure of White was not unconstitutional, defendants are entitled to immunity against plaintiffs' suit. Plaintiffs' tort claims against them for unlawful seizure of White must be dismissed.

B. Excessive Force Claims

Plaintiffs next claim that Officers Shelfo and Greenwell used excessive force against White when they approached his car with their weapons drawn. Second Am. Compl. ¶ 53. Officers may approach a vehicle with their weapons drawn when they can "reasonably anticipate that an arrest may at some point ensue" and that the arrest "may require a show of force, or

provoke an attempt to escape by car, or even an assault." United States v. White, 648 F.2d 29, 34-35 (D.C. Cir. 1981) (citations omitted).

Officer Shelfo personally observed White fleeing from a police stop, and observed White's car nearly hit pedestrians, briefly drive on the wrong side of the road, and strike two vehicles before coming to a stop.  Defs.' MSJ, Ex. 21 at 2263.  Because Officer Shelfo knew White had already attempted to escape a police stop by car, he could reasonably assume that White was willing to take the same extreme measure to escape the second stop.  His approach with a drawn weapon was therefore reasonable.

Officer Greenwell did not personally observe the actions of the Mercedes during the police chase, but he did hear information about the chase conveyed on the police radio.  Id. at 2241.  The Supreme Court has held that police officers may reasonably rely on a "radio bulletin" issued by other officers.  See United States v. Hensley, 469 U.S. 221, 231-33 (1985).  Moreover, Greenwell personally saw White's Mercedes crash into another vehicle on New Jersey Avenue, followed by Officer Shelfo's police cruiser driving up and blocking White's driver's side door.  Defs.' MSJ, Ex. 21 at 2241.  Based on the radio announcement and Greenwell's personal observations, a reasonable officer would suspect that White was potentially dangerous and that he should proceed with caution.  Greenwell could "reasonably anticipate that an arrest may at some point ensue" based on his observations, and that the arrest might "require a show of force, or provoke an attempt to escape by car, or even an assault."  White, 648 F.2d at 34-35 (citations omitted).  Officer Greenwell's approach with a drawn weapon was therefore also reasonable.

Because the defendants' actions were reasonable under this Circuit's test in White, they did not violate any of White's "clearly established" constitutional rights.  See Saucier, 553 U.S. at

201-02. The defendants are therefore entitled to qualified immunity, and plaintiffs' tort claims for excessive force must be dismissed.

C. Deadly Force Claims

Finally, plaintiffs claim that Officers Shelfo and Greenwell violated the Fourth and Fifth Amendments by using deadly force, namely, in shooting White while he was leaving his vehicle. Second Am. Compl. ¶¶ 53-56. The use of deadly force against a suspect is reasonable and permissible "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). "[I]f the suspect threatens the officer with a weapon, . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Id. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Plaintiffs' only evidence is their affidavit stating that the surveillance video provided by the Capitol Police, see Defs.' MSJ, Ex. 1, shows that White appears to have both hands raised in a gesture of surrender as he exited the vehicle, and that White is attempting to place an object in his left hand on the ground. Pls.' Opp'n, Ex. 2. From this description of the video, plaintiffs conclude that White presented no danger to the police and that his shooting was therefore unjustified. Id.

As a rule, statements made by the party opposing summary judgment must be accepted as true, but a party must "support his allegations . . . with facts in the record," and "unsubstantiated allegations . . . will not withstand summary judgment." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). The Supreme Court has expressly held that where video evidence is available,

if a nonmoving party at summary judgment adopts a position "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

The Court has carefully reviewed the video record at issue here.  As previously described, it shows White leaving his vehicle head and arms first through the driver's front window with a gun in his extended hand, and shows that the officers immediately retreat upon seeing the gun.  Defs.' MSJ, Ex. 1.  A still frame of the video appears to show White pointing a weapon at Officer Shelfo.  Defs.' MSJ, Ex. 23.  Although the video footage moves quickly and is not entirely clear, it does show White lunging out of the vehicle; the presence of an object that plaintiffs concede is a gun in one of White's hands, which were pointed towards the officers; and the immediate retreat of Officers Shelfo and Greenwell upon seeing the object. Defs.' MSJ, Ex. 1; Pls.' Opp'n, Ex. 2 ¶ 4(c).  The video thus contradicts any assertion by plaintiffs that White "had both hands raised in a gesture of surrender" as plaintiffs claim. Pls.' Opp'n, Ex. 2 ¶ 4(d).  Based on this evidence, the plaintiffs' assertions in their affidavit are "blatantly contradicted" by the unbiased video evidence, and the Court will not adopt their version of the events for the purpose of summary judgment.  See Scott, 550 U.S. at 380; see also Johnson v. Washington Metro. Area Transit Auth., 883 F.2d 125, 128-29 (D.C. Cir. 1989) (holding that summary judgment is appropriate "when a plaintiff's claim is supported solely by plaintiff's own self-serving testimony, and undermined by other credible evidence"), abrogated on other grounds by Belton v. Washington Metro. Area Transit Auth., 20 F.3d 1197 (D.C. Cir. 1994).

Even if one assumes White subjectively intended to surrender, Officers Shelfo and Greenwell could permissibly use deadly force based on White pointing a weapon towards Officer Shelfo.  See Garner, 471 U.S. at 11; see also Garczynski v. Bradshaw, 573 F.3d 1158,

1168 (11th Cir. 2009) (police officers' use of deadly force was reasonable when suspect refused to drop gun as ordered and swung gun in the direction of officers); <u>Wallace v. District of Columbia</u>, 685 F. Supp. 2d 104, 107-11 (D.D.C. 2010) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect."). Officers Shelfo and Greenwell saw White exit the vehicle with a gun in hand, and saw White point the gun towards Officer Shelfo. Under these "tense, uncertain, and rapidly evolving circumstances," <u>Graham</u>, 490 U.S. at 397, and without the benefit of 20/20 hindsight, it was objectively reasonable for the officers to conclude that White posed a serious threat of physical harm and to believe White was about to shoot Officer Shelfo. Because plaintiffs have failed to show defendants' actions violated the Constitution, defendants are entitled to qualified immunity, and plaintiffs' tort claims for use of deadly force must be dismissed.

IV. <u>Conclusion</u>

For the reasons explained above, the Court will grant defendants' motion for summary judgment under Federal Rule of Civil Procedure 56, dismiss plaintiffs' claims against Officers Shelfo and Greenwell with prejudice, and enter judgment in favor of defendants Shelfo and Greenwell on all of plaintiffs' claims against them.[4] A separate order will accompany this opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: <u>June 04, 2012</u>

---

[4] In addition, [32] plaintiff's motion to voluntarily dismiss their complaint without prejudice will be denied as moot. Both parties entered a stipulation that the motion should be withdrawn in favor of a ruling on the Defendants' motion for summary judgment. <u>See</u> Stipulation [Docket Entry 46].